IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────

DELROY ASKINS,

                                                    INDEX NO.
                                                    10-CV-2230 (CM)
                                                     ECF CASE

                          PLAINTIFF,

             vs                                     FIRST AMENDED
                                                    COMPLAINT
THE CITY OF NEW YORK, a municipal entity,           [JURY TRIAL
NEW YORK CITY POLICE OFFICER SYMON,                 DEMANDED]
SHIELD NO. 30264, NEW YORK CITY POLICE
OFFICERS "JOHN DOES 1 – 4,"

                          DEFENDANTS.

─────────────────────────────────────────

        Plaintiff DELROY ASKINS, by his attorneys, THE LAW OFFICES OF
WYLIE M. STECKLOW, complaining of the defendants, respectfully alleges as
follows:

## I. PRELMINARY STATEMENT

   1.    Plaintiff DELROY ASKINS brings this action for compensatory damages,
punitive damages and attorney's fees pursuant to 42 U.S.C. §§ 1981 and 1983
for violations of his civil rights, as said rights are secured by said statutes and the
Constitutions of the State of New York and the United States.

   2.    Plaintiff DELROY ASKINS is paralyzed from the waist down because of an
injury he sustained in or around 1994.  Since that time, Plaintiff DELROY
ASKINS has used a wheelchair to move around. On February 13, 2007, at
approximately 2:30pm, Plaintiff DELROY ASKINS went to visit with a friend
whose apartment building is located at or around 124th Street and Park Avenue,
in the City, State and County of New York.  Upon arriving at his friend's
residence, Plaintiff DELROY ASKINS pulled himself out of his wheelchair and
began to pull himself up the four steps located just inside the entrance to that
building in order to reach his friend's apartment. Plaintiff DELROY ASKINS was
clearly not a danger to the residents of the building, and it would have been
unlikely to any observer that Plaintiff DELROY ASKINS was trespassing.
However, at this time Plaintiff DELROY ASKINS was approached by two
Defendant John Doe Police Officers, one of whom Plaintiff DELROY ASKINS
believes was a senior officer, i.e., a Sergeant or Lieutenant.  Said Defendant
John Doe Police Officers, upon information and belief, had just entered the
building in order to conduct a vertical patrol of the premises.  Without asking for

Plaintiff DELROY ASKINS' identification or inquiring as to who he was visiting, and in total disregard for Plaintiff DELROY ASKINS' condition, the two aforesaid Defendant John Doe police officers began physically searching him, his wheelchair and its attached bag.  In unlawfully searching Plaintiff DELROY ASKIN's wheelchair bag, one of the two Defendant JOHN DOE Police Officers located a rubber top to a catheter leg bag, which Plaintiff DELROY ASKINS uses, due to his paralysis, for hygienic purposes.  Flying in the face of logic, the two Defendant John Doe Police Officers apparently determined that the catheter leg bag top was a crack pipe, and Plaintiff DELROY ASKINS was subsequently arrested for Criminal Trespass and Possession of a Controlled Substance in the Seventh Degree, with Defendant P.O. SYMON, Shield No. 30264, who Plaintiff DELROY ASKINS believes was not present at the scene of his arrest, "taking the collar" and submitting the requisite arrest paperwork.  After appearing several times in Criminal Court, the case against Plaintiff DELROY ASKINS was dismissed and sealed. The Plaintiff brings this action in a quest for answers as to why he was unlawfully searched and punitively arrested without probable cause, and subjected to malicious prosecution in the absence of criminal conduct.

## II. JURISDICTION

3.     This action is brought pursuant to 42 U.S.C. §§ 1983, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4) and the aforementioned statutory and constitutional provisions.

4.     Plaintiff DELROY ASKINS further invokes this Court's supplemental jurisdiction, pursuant to 28 USC. § 1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

## III. VENUE

5.     Venue is proper for the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(a), (b), and (c) and § 1402(b) because the claims arose in this district.

## IV. JURY DEMAND

6.     Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## V. THE PARTIES

7.     The Plaintiff DELROY ASKINS is an American citizen and resident of the City of New York, State of New York, and the County of New York.

8.     Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

9.    Defendant THE CITY OF NEW YORK maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

10.    That at all times hereinafter mentioned, the Defendant POLICE OFFICER Symon, and the Defendant Police Officers "JOHN DOES 1-4" (collectively, "defendant Police Officers" or "defendant 'JOHN DOE' Police Officers") were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

11.    That at all times relevant to this action, the defendant Police Officers, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

12.    Each and all of the acts of the defendant Police Officers alleged herein were done by said defendants while acting within the scope of their employment by defendant THE CITY OF NEW YORK.

13.    Each and all of the acts of the defendant Police Officers alleged herein were done by said defendants while acting in furtherance of their employment by defendant THE CITY OF NEW YORK.


## VI. FACTS COMMON  TO ALL CLAIMS

14.    Plaintiff DELROY ASKINS is 48 years old.

15.    Plaintiff DELROY ASKINS is an African-American man.

16.    Plaintiff DELROY ASKINS received a severe spinal injury in or about 1994.

17.    Since that time, Plaintiff DELROY ASKINS has paralyzed from the waist down.

18.    At all times relevant to this action, Plaintiff DELROY ASKINS required and requires the use of a wheelchair in order to transport himself.

19.    At all times relevant to this action, Plaintiff DELROY ASKINS used and uses a catheter leg bag for hygienic purposes.

20.    Upon information and belief, a catheter leg bag is a relatively small catheter waste receptacle that is used instead of a larger receptacle for increased mobility during use.

21.   Upon information and belief, leg bags must be changed with greater frequency than larger waste receptacles because of their relatively small size.

22.   A leg bag requires a particular form of sterile cap to interface with a catheter and/or to drain the leg bag.

23.   As a general practice, Plaintiff DELROY ASKINS keeps at least one spare leg bag in his wheelchair bag at all times.

24.   Upon information and belief, a rubber leg bag cap does not resemble a crack pipe, which, upon information and belief, is generally made of glass or metal, not rubber or plastic.

25.   On February 13, 2007, at or before approximately 2:30pm, Plaintiff DELROY ASKINS traveled to visit the apartment of his friend, which was located at or near 124th Street and Park Avenue (hereinafter "his friend's apartment," "Plaintiff DELROY ASKIN's friend's apartment").

26.   Upon information and belief, Plaintiff DELROY ASKINS' friend's apartment was located in a public housing building.

27.   This would have been Plaintiff DELROY ASKINS' first time visiting his friend at his friend's apartment.

28.   Plaintiff DELROY ASKINS intended to visit with his friend at his friend's apartment.

29.   At or around 2:30 p.m. on February 13, 2007, Plaintiff DELROY ASKINS arrived at his friend's apartment building.

30.   There are approximately four steps located just inside the entrance to his friend's apartment building.

31.   Upon information and belief, Plaintiff DELROY ASKINS' friend's apartment building was not handicap accessible as that term is defined in the Americans with Disabilities Act of 1990, as amended.

32.   In order to reach his friend's apartment, Plaintiff DELROY ASKINS would need to go up these stairs.

33.   There is no ramp or other Americans with Disabilities Act means of entrance or egress at this location in the building which would facilitate the use of his wheelchair.

34.   In order that Plaintiff DELROY ASKINS not trouble his friend, he pulled himself out of his wheelchair, and began pulling himself up the four steps located just inside the apartment building.

35.   As Plaintiff DELROY ASKINS was pulling himself up the steps, two police officers, Defendant Police Officer JOHN DOE 1 and Defendant Police Officer JOHN DOE 2 (collectively, "Defendant John Doe Police Officers"), entered the building.

36.   Upon information and belief, Defendant Police Officer JOHN DOE 1 was a rank Sergeant or higher.

37.   The Defendant John Doe Police Officers did not ask Plaintiff DELROY ASKINS for identification.

38.   The Defendant John Doe Police Offices did not inquire as to whom Plaintiff DELROY ASKINS was visiting in his friend's apartment building.

39.   Plaintiff DELROY ASKINS was carrying a valid New York State Non-Driver identification card at the time he was stopped.

40.   The Defendant John Doe Police Officers did not ask Plaintiff DELROY ASKINS for any identification when they confronted him.

41.   The Defendant John Doe Police Officers did not ask Plaintiff DELROY ASKINS for the name of the friend he was visiting.

42.   The Defendant John Doe Police Officers did not ask Plaintiff DELROY ASKINS which apartment number he was visiting.

43.   The Defendant John Doe Police Officers then began a search of Plaintiff DELROY ASKINS' wheelchair.

44.   Defendant JOHN DOE 1 removed a used leg bag cap from the bag on the back of Plaintiff DELROY ASKINS' wheelchair.

45.   Defendant JOHN DOE 1 stated, in sum and substance, that the rubber cap was a "crack pipe."

46.   This statement is false.

47.   The Defendant John Doe Police Officers instead stated, in sum and substance, that Plaintiff DELROY ASKINS was "trespassing."

48.   This statement is false.

49.   One or more of the Defendant John Doe Police Officers handcuffed Plaintiff DELROY ASKINS.

50.   Plaintiff DELROY ASKINS had no outstanding warrants against him.

51.   Plaintiff DELROY ASKINS was carrying no illegal substances or other contraband.

52.   At or around this time, one or more of the defendant Police Officers placed Plaintiff DELROY ASKINS under arrest.

53.   At no point in this encounter did Plaintiff DELROY ASKINS resist the defendant Police Officers in any way.

54.   At no point in this encounter did Plaintiff DELROY ASKINS resist being arrested.

55.   At no time in this encounter did Plaintiff DELROY ASKINS obstruct the governmental administration of justice in any way.

56.   At no point in this encounter did Plaintiff DELROY ASKINS speak disrespectfully or contemptuously to any of the defendant Police Officers.

57.   At or around this time, one of the defendant Police Officers stated, in sum and substance, "LET'S SEE HOW THEY LIKE THIS."

58.   Plaintiff DELROY ASKINS did not understand what this comment meant.

59.   Plaintiff DELROY ASKINS was made to feel powerless and helpless by the Defendant Police Officer's strange remark.

60.   Plaintiff DELROY ASKINS was made to feel as if his arrest was being undertaken for some collateral purpose by the Defendant Police Officer's strange remark.

61.   Upon information and belief, the defendant Police Officers were or should have been aware at that time that they lacked probable cause to arrest Plaintiff DELROY ASKINS.

62.   Plaintiff DELROY ASKINS was transported to the 25th precinct.

63.   Plaintiff DELROY ASKINS was searched once again, upon his arrival at the 25th precinct.

64.   Plaintiff DELROY ASKINS was charged under New York Penal Law § 220.03, for possession of a controlled substance.

65.   Plaintiff DELROY ASKINS was not carrying any illegal substances or contraband of any sort.

66.   Plaintiff DELROY was charged under New York Penal Law § 140.10, for Criminal Trespass in the Third Degree.

67.   Plaintiff DELROY was not trespassing.

68.   Plaintiff DELROY ASKINS did not criminally trespass, but rather was invited to his friend's apartment, and was struggling to climb a flight of stairs using only his hands, and with his wheelchair left behind, when he was searched and arrested without probable cause by the defendant Police Officers.

69.   Upon information and belief, Plaintiff DELROY ASKINS was placed in a cell.

70.   Upon information and belief, Plaintiff DELROY ASKINS was taken to a hospital prior to arraignment.

71.   Upon information and belief, Plaintiff DELROY ASKINS was held in police custody for a period of less than twenty-four hours prior to his arraignment.

72.   Thereafter, upon information and belief, Plaintiff DELROY ASKINS was released on his own recognizance.

73.   Thereafter, upon information and belief, Plaintiff DELROY ASKINS was required to return to court one or more times.

74.   Thereafter, on or about May 25, 2007, the prosecution of Plaintiff DELROY ASKINS for the charges arising from the above-referred incident was terminated favorably to Plaintiff DELROY ASKINS.

75.   Thereafter, on or about May 25, 2007, the prosecution of Plaintiff DELROY ASKINS for the charges arising from the above-referred incident was terminated when the charges against Plaintiff DELROY ASKINS were dismissed and sealed.

76.   Upon information and belief, the Defendant Police Officers should have known that a disabled man, having left his wheelchair behind, and struggling to climb a flight of stairs, presented no threat justifying a warrantless search of his person and posessions.

77.   Upon information and belief, the charges of trespassing and possession of a controlled substance proffered against Plaintiff DELROY ASKINS can be characterized as a "cover" charges, meaning charges that can be levied by

officers against individuals whom the officers wish to arrest but who have not committed actual crimes or offenses.

78.   Upon information and belief, the Defendant Police Officers arrested Plaintiff DELROY ASKINS to achieve a collateral objective or objectives unknown to Plaintiff DELROY ASKINS to date.

79.   Upon information and belief, the defendant Police Officers were or should have been aware at that time that they lacked probable cause to search or arrest Plaintiff DELROY ASKINS.

80.   Upon information and belief, the defendant Police Officers swore out a criminal complaint against Plaintiff DELROY ASKINS, even though they knew or should have known that they lacked probable cause to search arrest him.

81.   Upon information and belief, the Defendant Police Officers swore out a criminal complaint against Plaintiff DELROY ASKINS in the absence of probable cause due to unprovoked animosity towards him.

82.   Upon information and belief, the Defendant Police Officers swore out a criminal complaint against Plaintiff DELROY ASKINS in the absence of probable cause in order to meet quantitative productivity goals.

83.   Upon information and belief, the Defendant Police Officers swore out a criminal complaint against Plaintiff DELROY ASKINS in the absence of probable cause under a custom or practice of racism of victimization, not of hate, whereby minority individuals are charged with crimes and violations such as trespassing, resisting arrest, disorderly conduct, and obstruction of governmental administration, in the absence of probable cause to arrest, due to a perceived ease of prosecution of such minority individuals.

84.   As a result of the foregoing, Plaintiff DELROY ASKINS sustained, *inter alia,* mental injuries, emotional distress, embarrassment, humiliation and deprivation of his constitutional rights.

## IMPROPER "VERTICAL PATROL" ARRESTS

85.   A vertical patrol is a top-to-bottom walk-through or patrol or "sweep" of hallways, stairwells, rooftops and landing, elevators, and other common areas a NYCHA residence.  See NYPD Patrol Guide 212-59 and 212-60.

86.   Under the vertical patrol policy and trespass arrest practices, New York City Police Officers conduct roving pedestrian checkpoints in and around NYCHA residences, wherein they indiscriminately stop and question every person they observe, without first having an objective individualized suspicion of a crime, and then unlawfully arrest individuals for trespass, without probable cause.

87.   Defendant CITY OF NEW YORK and the New York Housing Authority ("NYCHA"), operating through and in conjunction with the New York Police

Department, continue to conduct, enforce and sanction an unlawful vertical patrol and arrest policy which has resulted in a pattern and practice of illegal stops, seizures, questioning, searches, and false arrests of authorized visitors to NYCHA residents.

88.   The discriminatory implementation of vertical patrol policies have resulted in the disproportionate pattern of detention and arrest of individuals based upon their race, ethnicity, and national origin, in and around public housing projects.

89.   As a result of vertical patrol practices, those in and around public housing buildings are perceived to be potential criminals and are subjected to police inquiries based on little more than their mere presence in public housing projects.[1]

90.   A recent article in the New York Daily News highlights how vertical patrols have led to numerous unjustified trespass arrests and the need for retraining of New York City Police Officers, and an overhaul of its vertical patrol policy.[2]

91.   The existence of the aforesaid unconstitutional vertical patrols may additionally be inferred from repeated occurrences of similar wrongful conduct, as documented in lawsuits, as was the case in Williams v. City of New York, 06 Civ. 6601 (NGG), 2009 U.S. Dist. LEXIS 94418 (E.D.N.Y.), wherein officers arrested the Plaintiff during a "vertical patrol" of a public housing project despite evidence that he had a legitimate reason to be on the premises).

### "CONTEMPT OF COP" AND "COVER CHARGE" ARRESTS

92.   On February 28, 2008, the Seattle Post-Intelligencer published an investigative review of six (6) years of Seattle Municipal Court files, wherein the Post-Intelligencer's investigators found that African-Americans in that predominantly Caucasian city were arrested solely on charges of "obstructing a public officer" and related crimes such as resisting arrest eight times as often as Caucasians.[3]

---

[1]  *See generally* Adam Carlis, "Note: The Illegality of Vertical Patrols," 109 Colum. L. Rev. 2002 (2009), incorporated herein by reference and available online at http://www.columbialawreview.org/assets/pdfs/109/8/Carlis.pdf.

[2]  Walsh, Jeremy, "Class-action suit vs. NYPD cited in drop of trespassing arrests," New York Daily News, March 16, 2011.  Article incorporated herein by reference and available online at:
http://www.nydailynews.com/news/ny_crime/2011/03/16/2011-03-16_suit_cited_in_trespass_arrest_dip.html

[3] Nalder, Kamb and Lathrop, "Blacks Are Arrested on 'Contempt of Cop' Charge at Higher Rate," Seattle Post-Intelligencer, February 28, 2008.  Article incorporated herein by reference and available online at:
http://www.seattlepi.com/local/353020_obstructmain28.asp

93.   The Seattle Post-Intelligencer's investigative review cited above also found that the Seattle City Attorney's Office dropped nearly half of all Seattle criminal cases predicated solely on charges of "obstructing a public officer" and related crimes such as resisting arrest between January 2002 and 2008.  See fn3.

94.   In response to Seattle Police officers' questionable arrest activities discussed above, "Leo Poort, the [Seattle Police] department's legal adviser, included warnings about obstruction arrests in… his top 12 tips to officers for 'avoiding civil liability lawsuits.'  'Don't arrest for 'contempt' of cop,' he wrote in tip No. 3. 'Officers must be thick skinned and not unduly influenced by the attitudes of persons they contact. Flunking the 'attitude' test (is) not a bookable offense.'" See fn1.

95.   In a review of San Jose criminal cases published on October 31, 2009, the San Jose Mercury News reported that the Santa Clara County Prosecutor declined to prosecute over one-third (33.33…%) of resisting arrest cases brought by San Jose police, a rate that is markedly disproportionate to the Santa Clara County Prosecutor's general twenty percent (20%) decline-to-prosecute rate.[4]

96.   The San Jose Mercury News investigation cited above also found that the San Jose Police Department did not sustain or substantiate civilian complaints with respect to any of the ninety-nine (99) use-of-force cases that it reviewed in 2008, even though the San Jose Independent Police Auditor disagreed with police findings in twenty-five (25) of those 99 cases. See fn2.

97.   In response to the San Jose Mercury News investigation cited above, the San Jose Police Department instituted a new policy of tracking arrests where it appears that resisting arrest is being used as a cover charge to justify unnecessary and excessive police uses of force on civilians. See fn4.

98.   A November 19, 1997 New York Times special report on police brutality predicated on perceived or actual disrespect of New York City Police Officers noted that at that time, Defendant City of New York did not monitor or track police use or levying of charges such as disorderly conduct or resisting arrest.[5]

---

[4] Webby, Sean, "Mercury News investigation: San Jose police often use force in resisting-arrest cases,"  San Jose Mercury News, October 31, 2009.  Article incorporated by reference herein and available online at http://www.mercurynews.com/top-stories/ci_13686438?nclick_check=1

[5] Sontag, Deborah, and Barry, Dan, "CHALLENGE TO AUTHORITY: A special report.; Disrespect as Catalyst for Brutality," New York Times, November 19, 1997.  Article incorporated by reference herein and available online at

99.   November 19, 1997 New York Times special report on police brutality predicated on perceived or actual disrespect of New York City Police Officers noted that at that time, Defendant City of New York did not monitor or track police use or levying of charges such as disorderly conduct or resisting arrest, despite considerable anecdotal evidence that New York City Police Officers were arresting individuals on those and other like charges to justify use of force and/or to punish those individuals for "contempt of cop." <u>See</u> fn5.

100. The above-cited New York Times special report noted that Los Angeles had already instituted a system for tracking the initiation and dispositions of "contempt of cop" and "cover charge" charges such as resisting arrest and disorderly conduct as of the time of that article's publication in 1997.  <u>See</u> fn5.

101. Upon information and belief, the "contempt of cop" and "cover charge" charges levied most regularly by New York City Police Officers are disorderly conduct, resisting arrest, obstruction of governmental administration, as well as criminal trespassing within vertical patrol scenarios.

102. Upon information and belief, "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, obstruction of governmental administration, as well as criminal trespassing within vertical patrol scenarios, are relatively easy for police to levy in the absence of actual probable cause because they may arise out of nearly any police-civilian interactions.

103.  Upon information and belief, "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, obstruction of governmental administration, as well as criminal trespassing within vertical patrol scenarios, are relatively easy for police to levy in the absence of actual probable cause because they can be levied solely upon the allegations of the arresting officer(s) without reference to physical evidence or witness observation of criminal acts.

104. Upon information and belief, to date Defendant City of New York has not implemented any particular, training, oversight measures or policies designed or intended to curtail the improper use by New York City Police Officers of so-called "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, obstruction of governmental administration, as well as criminal trespassing within vertical patrol scenarios.

105. Upon information and belief, and despite due and repeated notice that New York City Police Officers have an ongoing custom or practice of charging individuals with crimes and violations such as disorderly conduct, resisting arrest, obstruction of governmental administration, as well as criminal trespassing within

---

http://query.nytimes.com/gst/fullpage.html?res=9807E7D9163BF93AA25752C1A961958260&scp=8&sq=contempt+of+cop&st=cse&pagewanted=all

vertical patrol scenarios, for improper purposes, including but not limited to personal vindication and/or as pretexts to justify use of force, to date Defendant City of New York has not implemented any particular training, oversight measures or policies designed or intended to curtail the improper use by New York City Police Officers of so-called "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, obstruction of governmental administration, as well as criminal trespassing within vertical patrol scenarios.

106. Upon information and belief, and despite due and repeated notice that New York City Police Officers have an ongoing custom or practice of charging individuals with crimes and violations such as criminal trespassing, resisting arrest, disorderly conduct, and obstruction of governmental administration as pretexts to justify punitive false arrests undertaken in the absence of probable cause, to date Defendant City of New York has not implemented any particular training, oversight measures or policies designed or intended to curtail the improper use by New York City Police Officers of so-called "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, obstruction of governmental administration, as well as criminal trespassing within vertical patrol scenarios.

107. Upon information and belief, and despite due and repeated notice that New York City Police Officers such as the Defendant Police Officers have charged and continue to charge individuals with crimes and violations such as disorderly conduct, resisting arrest, obstruction of governmental administration, as well as criminal trespassing within vertical patrol scenarios, as pretexts to justify punitive false arrests undertaken in the absence of probable cause, to date Defendant City of New York has not implemented any particular oversight measures or policies designed or intended to curtail the improper use by New York City Police Officers of so-called "contempt of cop" and "cover charge" charges such disorderly conduct, resisting arrest, obstruction of governmental administration, as well as criminal trespassing within vertical patrol scenarios.

**ARREST QUOTAS**

108. Upon information and belief, the arrest of the Plaintiff DELROY ASKINS was motivated wholly or in part by the Defendant Police Officers' need to meet quantitative enforcement "productivity goals" promulgated by Defendant CITY OF NEW YORK.

109. Upon information and belief, the arrest of the Plaintiff DELROY ASKINS was motivated wholly or in part by the Defendant Police Officers' need to meet quantitative enforcement "productivity goals" promulgated by policymakers and/or supervisory staff of Defendant CITY OF NEW YORK's police department.

110. The existence of the aforesaid unconstitutional arrest quota custom and/or policy may be inferred as a finding of fact when, on June 24, 2010, the court in Floyd v. City of New York, United States District Court, Southern District of New

York, 08 CV 1034, ordered the release of documentation in the possession of the Defendant New York City Police Department's Internal Affairs Bureau, which investigates claims of serious misconduct and corruption of members of the NYPD.  The court held that the Plaintiff in that case, in order to prove the existence of unconstitutional arrest quotas, had overcome the law enforcement privilege due the strong public interest in uncovering the civil rights violations alleged in the Complaint, and by demonstrating a compelling need to review such documentation.

111. The existence of the aforesaid unconstitutional arrest quota custom and/or policy was confirmed as a finding of fact when, on February 18, 2011, the jury in Bryant v. City of New York, Kings County Supreme Court Docket #022011/2007, found that the Plaintiff in that case's arrest had resulted from a policy "regarding the number of arrests officers were to make that violated plaintiff's constitutional rights and contributed to her arrest" imposed by Defendant City of New York.

112. The existence of the aforesaid unconstitutional arrest quota custom and/or policy may additionally be inferred from repeated occurrences of similar wrongful conduct, as documented in lawsuits including but not limited to the following civil rights actions filed against the City of New York:

- **Alvin Williams v. The City of New York et al.,** United States District Court, Southern District of New York, 05 CV 4013.

- **Corey Williams v. The City of New York et al.,** United States District Court, Eastern District of New York, 07 CV 5362.

- **Joseph Malachi LaDoucier v. The City of New York et al.,** United States District Court, Southern District of New York, 10 CV 5089.

113. The existence of the aforesaid unconstitutional arrest quota custom and/or policy may further be inferred from the admission by Deputy Commissioner Paul J. Browne, as reported by the media on November 8, 2010, that commanders are permitted to set "productivity goals."[6]

114. The existence of the aforesaid unconstitutional arrest quota custom and/or policy may further be inferred from the posting of lists of quantitative targets for various forms of summonses at the 77th Precinct in Brooklyn.  *See* fn6.

115. Attached hereto as Exhibit "A" are copies of the quantitative target sheets obtained from the 77th Precinct by or on behalf of the New York Daily News, as referenced in the aforesaid November 8, 2010 New York Daily News article.

---

[6] Fanelli, James, "Cops At Brooklyn's Crime-Ridden 77th Precinct Told To Meet Quotas For Moving Violations, Memos Say," New York Daily News, November 8, 2010. Article incorporated by reference herein and available online at http://www.nydailynews.com/ny_local/2010/11/08/2010-11-08_cops_told_to_meet_quotas.html.

116. The existence of the aforesaid unconstitutional arrest quota custom and/or policy may further be inferred from the tapes recordings acquired by WABC-TV/DT, including, among other admissions, a 41st precinct sergeant explaining that each of his officers is held to a twenty summons per month and one arrest per month enforcement quota, as reported by the media on March 3, 2010.[7]

117. The existence of the aforesaid unconstitutional arrest quota custom and/or policy may further be inferred from the tape recordings acquired by the Village Voice, including, among other admissions, an 81st precinct sergeant telling his officers to make "special" arrests as directed by their superiors even if they must void the arrests at the end of their shifts, as reported by the media on May 11, 2010.[8]

## FIRST CLAIM FOR RELIEF
## DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983

118.  Plaintiff DELROY ASKINS repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

119. All of the aforementioned acts of the Defendant CITY and Defendant Police Officers, their agents, servants and employees, were carried out under the color of state law.

120. All of the aforementioned acts deprived Plaintiff DELROY ASKINS of his rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

121. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

122. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

123. The defendant Police Officers and Defendant CITY OF NEW YORK,

---

[7] Hoffer, Jim, "NYPD Officer Claims Pressure To Make Arrests," WABC News, March 3, 2010. Article incorporated by reference herein and available online at http://abclocal.go.com/wabc/story?section=news/investigators&id=7305356.
[8] Rayson, Graham, "The NYPD Tapes, Part 2: Bed-Stuy Street Cops Ordered: Turn This Place Into A Ghost Town."  Village Voice, May 11, 2010. Article incorporated by reference herein and available online at http://www.villagevoice.com/2010-05-11/news/nypd-tapes-part-2-bed-stuy/.

collectively and individually, while acting under color of state law, engaged in Constitutionally-violative conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

124. As a result of the foregoing, Plaintiff's liberty was restricted for an extended period of time; he was arrested, and he was humiliated, without probable cause.

125. As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer violations of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, legal expenses and damage to his reputation and standing within his community.

126. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## SECOND CLAIM FOR RELIEF
## FALSE ARREST UNDER 42 U.S.C. § 1983

127. Plaintiff DELROY ASKINS repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

128. As a result of the aforesaid conduct by defendants, Plaintiff DELROY ASKINS was subjected to illegal, improper and false arrest by the Defendants and taken into custody and caused to be falsely imprisoned, detained and confined without any probable cause, privilege or consent.

129. As a result of the foregoing, Plaintiff's liberties were restricted for an extended period of time; he was put in fear for his own safety, and he was humiliated, without probable cause.

130. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## THIRD CLAIM FOR RELIEF
## FAILURE TO INTERVENE UNDER 42 U.S.C. §1983

131. Plaintiff DELROY ASKINS repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

132. The defendant Police Officers and Defendant CITY OF NEW YORK had an affirmative duty to intervene on plaintiff DELROY ASKINS' behalf to prevent the violation of his constitutional rights.

133. The individual defendant Police Officers failed to intervene on plaintiff DELROY ASKINS' behalf to prevent the violation of his constitutional rights despite having had a realistic opportunity to do so.

134. The individual defendant Police Officers failed to intervene on plaintiff DELROY ASKINS' behalf to prevent the violation of his constitutional rights despite having substantially contributed to the circumstances within which the plaintiff's rights were violated by their affirmative conduct.

135. As a result of the aforementioned conduct of the individual defendants, plaintiff DELROY ASKINS' constitutional rights were violated.

136. As a result of the above constitutionally impermissible conduct, plaintiff was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, legal expenses and damage to his reputation and standing within his community.

137. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## FOURTH CLAIM FOR RELIEF
## MALICIOUS ABUSE OF PROCESS UNDER 42 U.S.C. § 1983

138. Plaintiff DELROY ASKINS repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

139. Defendants instigated and issued legal process to place plaintiff DELROY ASKINS under arrest.

140. Defendants arrested plaintiff DELROY ASKINS in order to obtain collateral objectives outside the legitimate ends of the legal process.

141. These collateral objectives outside the legitimate ends of the legal process include but are not limited to the Defendant Police Officers' personal satisfaction.

142.  These collateral objectives outside the legitimate ends of the legal process include but are not limited to the Defendant Police Officers' desire to "see how they like this."

143. TThese collateral objectives outside the legitimate ends of the legal process include but are not limited to: the Defendant Police Officers' seeking to meet quantitative "productivity goals" for enforcement activity imposed by Defendant CITY OF NEW YORK through NYPD supervisors upon the Defendant Police Officers.

144. *Inter alia*, Defendants acted with intent to do harm to Plaintiff DELROY ASKINS without excuse or justification.

145. As a result of the aforementioned conduct of the individual defendants, Plaintiff DELROY ASKINS' constitutional rights were violated.

146. As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer violations of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, legal expenses and damage to his reputation and standing within his community.

147. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## FIFTH CLAIM FOR RELIEF
## MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983

148. Plaintiff DELROY ASKINS repeats, reiterate and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

149. Defendants unlawfully initiated a search of Plaintiff DELROY ASKINS before properly inquiring as to why he was present in his friend's apartment building.

150. Defendants unlawfully arrested Plaintiff DELROY ASKINS without a warrant and without probable cause.

151. Defendants misrepresented and falsified evidence before the District Attorney, including but not limited to representing that a rubber leg bag cap was a crack pipe.

152. Upon information and belief, the Defendant Police Officers knew or should have known that a rubber leg bag cap could not be used to smoke cocaine.

153. Upon information and belief, the Defendant Police Officers knew or should have known that a rubber leg bag cap would not be used to smoke cocaine.

154. Defendants did not make a complete and full statement of facts to the District Attorney.

155. Defendants withheld exculpatory evidence from the District Attorney.

156. Defendants were directly and actively involved in the initiation of criminal proceedings against Plaintiff DELROY ASKINS.

157. Defendants lacked probable cause to initiate criminal proceedings against Plaintiff DELROY ASKINS.

158. Defendants acted with malice in initiating criminal proceedings against plaintiff DELROY ASKINS.

159. Defendants misrepresented and falsified evidence throughout all phases of the criminal proceeding.

160. Despite the wrongful actions of the Defendant Police Officers, and notwithstanding the perjurious conduct of the Defendant Police Officers, the criminal proceedings were terminated in Plaintiff DELROY ASKINS' favor on May 25, 2007, when all charges against him were dismissed.

161. As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer a violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, legal expenses and damage to his

reputation and standing within his community.

162. As a result of Defendants' impermissible conduct, Plaintiff demand judgment against Defendants in a sum of money to be determined at trial.

## SIXTH CLAIM FOR RELIEF
## MUNICIPAL LIABILITY UNDER *MONELL*

163. Plaintiff DELROY ASKINS repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

164. Defendants arrested and incarcerated Plaintiff DELROY ASKINS in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize Plaintiff's liberty, well-being, safety and constitutional rights.

165. The acts complained of were carried out by the aforementioned individual defendant Police Officers in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

166. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

167. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department include, but are not limited to, the following unconstitutional practices:

a) wrongfully arresting individuals without probable cause in "vertical patrol" scenarios.

b) wrongfully arresting individuals without probable cause for improper purposes (i.e. "contempt of cop" "cover charge" arrests);

c) wrongfully arresting innocent persons in order to meet quantitative "productivity goals" (i.e., arrest quotas).

d) wrongfully arresting persons without probable cause due to perceived lack of respect for the police officer; in order to meet quantitative "productivity goals" (i.e., "contempt of cop" arrests used to satisfy arrest quotas).

## IMPROPER "VERTICAL PATROL" ARRESTS

168. The implementation of Defendant CITY OF NEW YORK's vertical patrol policies have resulted in numerous violations of the rights of minority residents and their authorized guests under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, such as was the case with Plaintiff DELROY ASKINS.

## "CONTEMPT OF COP" AND "COVER CHARGE" ARRESTS

169. The particular arrest of the Plaintiff is believed to have been motivated in whole or in part by the aforesaid custom or practice of charging individuals with crimes and violations such as trespassing, resisting arrest, disorderly conduct, and obstruction of governmental administration for personal vindication, and/or as pretexts to justify use of force, and/or to justify punitive false arrests because the Plaintiff's arrest was undertaken in the absence of probable cause to arrest.

170. The particular arrest of the Plaintiff is believed to have been motivated in whole or in part by the aforesaid custom or practice of charging individuals with crimes and violations such as trespassing, resisting arrest, disorderly conduct, and obstruction of governmental administration for personal vindication and/or as pretexts to justify use of force, and/or to justify punitive false arrests because it was undertaken in a manner which indicated that the individual Defendant Police Officers who participated in the Plaintiff's arrest made the determination to search and arrest the Plaintiff before determining why the Plaintiff should be searched or arrested.

171. The particular arrest of the Plaintiff is believed to have been motivated in whole or in part by the aforesaid custom or practice of charging individuals with crimes and violations such as trespassing, resisting arrest, disorderly conduct, and obstruction of governmental administration for personal vindication and/or as pretexts to justify use of force, and/or to justify punitive false arrests, because when the Defendant Police Officers encountered Plaintiff DELROY ASKINS, he was out of his wheelchair, clearly not a threat, and struggling to go up a flight of stairs.  The Defendant Police Officers nevertheless failed to inquire as to whom in the building he was visiting, and instead immediately began a search of his property and person, and finally arrested him in the absence of probable cause to do so.

## ARREST QUOTAS

172. The particular arrest of the Plaintiff is believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because they were undertaken in the absence of probable cause to arrest.

173. The particular arrest of the Plaintiff is believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because it was undertaken in a manner which indicated that the individual Defendant Officers who participated in the Plaintiff's arrest made the determination to search and arrest the Plaintiff before determining why the Plaintiff should be searched or arrested.

174. The particular arrest of the Plaintiff is believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because the Plaintiff was arrested despite the fact that probable cause to search or arrest an individual is not established by observing a clearly disabled

man struggling to get up a flight of stairs.

175. The particular arrest of the Plaintiff is believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because the Plaintiff was arrested in part because one of the Defendant Police Officers stated that a rubber leg back cap was a crack pipe, a finding that should be called into question given the obvious differences between these two items.

176. The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department evinced a deliberate indifference to the safety, well-being and constitutional rights of Plaintiff DELROY ASKINS.

177. The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the direct and proximate causes of the constitutional violations suffered by Plaintiff DELROY ASKINS as alleged herein.

178. The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the moving force behind the constitutional violations suffered by Plaintiff DELROY ASKINS as alleged herein.

179. As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department, Plaintiff DELROY ASKINS was falsely arrested and incarcerated.

180. As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer a violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, legal expenses and damage to his reputation and standing within his community.

181. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## SEVENTH CLAIM FOR RELIEF
## EQUAL PROTECTION UNDER 42 U.S.C. §§ 1981 and 1983

182. Plaintiff DELROY ASKINS repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

183. At all times described herein, Plaintiff DELROY ASKINS was possessed of the right to equal protection under the laws, as guaranteed under the 14th Amendment to the United States Constitution.

184. Defendant Police Officers arrested and incarcerated Plaintiff DELROY ASKINS in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize Plaintiff's

liberty, well-being, safety and constitutional rights.

185. The acts complained of were carried out by the aforementioned individual Defendant Police Officers in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

186. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

187. Plaintiff DELROY ASKINS was falsely accused of crimes and violations and was taken into Police custody and detained against his will.

188. That following his arrest, Plaintiff DELROY ASKINS was charged with crimes and violations.

189. That the above described charges were a pretext intended to justify the Plaintiff's illegal arrests.

190. That the actions of Defendant Police Officers heretofore described, constituted unlawful detention, imprisonment, and malicious prosecution and were designed to and did cause pain and suffering both in violation of the Plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §§ 1981 and 1983 and the United States Constitution, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for the Plaintiff's exercise of his civil and constitutional rights of free speech, free expression and expressive association as guaranteed by First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

191. As discussed by the court in <u>Brown v. City of Oneonta</u>, 221 F.3d 329 (1999), the existence of an equal protection violation may be confirmed by a finding that a similarly situated group of non-minority individuals is treated differently.  That is, the Plaintiff must allege that a government actor intentionally discriminated against them on the basis of race.

192. On March 1, 2010, the New York Times published an Op-Ed piece entitled "Watching Certain People," wherein the author cited to New York City Police Department Statistics showing that of the 2,798,461 stops made by police officers during the years 2004 through 2009, African-American men accounted for 1,444,559 of those stops, and Hispanics accounted for 843,817 of those stops, or 51.6 percent and 30.1 percent, respectively.  The vast majority of those stopped, 88.2 percent, were not guilty of any crime.[9]

---

[9] Herbert, Robert, "Watching Certain People," New York Times, March 1, 2010Seattle Post-Intelligencer, February 28, 2008.  Article incorporated herein by

193. On February 22, 2011, the New York Daily News published an article citing New York Police Department stops for the year 2010, which numbered 601,055.  This figure marked a 4.3 percent increase from the year 2009, and African-American and Latino men accounted for approximately 85 percent of all stops.[10]

194. The particular arrest of the Plaintiff DELROY ASKINS is believed to have been motivated in whole or in part by a custom or practice of racism of victimization, not of hate, whereby minority individuals are charged with crimes and violations such as trespassing, resisting arrest, disorderly conduct, and obstruction of governmental administration, in the absence of probable cause to arrest, due to a perceived ease of prosecution of such minority individuals.

195. The particular arrest of the Plaintiff DELROY ASKINS is believed to have been motivated in whole or in part by a custom or practice of racism of victimization, not of hate, whereby minority individuals are charged with crimes and violations such as trespassing, resisting arrest, disorderly conduct, and obstruction of governmental administration, in the absence of probable cause to arrest, due to a perceived ease of prosecution of such minority individuals.

196. The particular arrest of the Plaintiff DELROY ASKINS is believed to have been motivated in whole or in part by a custom or practice of racism of victimization, not of hate, because the Defendant Police Officers initiated a search of Plaintiff DELROY ASKINS before clearly establishing whether or not he was visiting a friend or asking for identification, and informed Plaintiff DELROY ASKINS that he was being arrested when they knew or should have known that the rubber cap for his leg bag was not a crack pipe, and despite the fact that Plaintiff DELROY ASKINS is clearly disabled and was simply trying to move himself up a flight of stairs.

197. The Defendant Police Officers, through their actions, carried out a discriminatory application of such laws, driven by a discriminatory motivation of what might otherwise be facially neutral statutes due to a perceived ease of prosecution.

---

reference and available online at:
http://www.nytimes.com/2010/03/02/opinion/02herbert.html?scp=7&sq=police%20stop%20frisk%20african%20american%20men&st=cse

[10] Parascandola, Rocco, "New York Police Department Stopped More than 600,000 in 2010, the Highest Number Ever Recorded, February 22, 2011.  Article incorporated herein by reference and available online at:
http://articles.nydailynews.com/2011-02-22/news/29442269_1_latino-men-fight-crime-new-yorkers

198. As a result of the aforementioned conduct, the defendants have violated Plaintiff DELROY ASKINS' constitutional rights to equal protection, and the Plaintiff is entitled to seek redress under 42 U.S.C. §§ 1981 and 1983, and is further entitled to injunctive relief to the extent necessary to prevent further disparate treatment and retaliation.

199. As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer a violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, legal expenses and damage to his reputation and standing within his community.

200. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

201. All of the foregoing acts by defendants deprived Plaintiff DELROY ASKINS of federally protected rights, including, but not limited to, the right:

A. Not to be deprived of liberty without due process of law;

B. To be free from seizure and arrest not based upon probable cause;

C. To be free from unwarranted and malicious criminal prosecution;

D. To be free from malicious abuse of process;

E. To receive equal protection under the law.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

[a] Invoke pendent party and pendent claim jurisdiction.

[b] Award appropriate compensatory and punitive damages.

[c] Award appropriate declaratory and injunctive relief.

[d] Empanel a jury.

[e] Award attorney's fees and costs.

[f] Award such other and further relief as the Court deems to be in the interest of justice.

DATED:      New York, New York
            May 12, 2011

Respectfully submitted,

SAMUEL B. COHEN [SC 0622]
LAW OFFICES OF WYLIE M. STECKLOW
10 SPRING STREET – SUITE 1
New York, New York 10012
[212] 566-8000
[212] 202-4952/FAX
SAM@WYLIELAW.COM
ATTORNEY FOR PLAINTIFF